**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br>　　　Plaintiff,<br><br>v.<br><br>PRECISION DRILLING CORPORATION<br><br>　　　Defendant. | CIVIL ACTION NO. 6:21-CV-00987-ADA |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY

Plaintiff FLEET CONNECT SOLUTIONS LLC ("Fleet Connect" or "Plaintiff") hereby

opposes Defendant Precision Drilling Corporation ("Precision Drilling" or "Defendant") Motion

to Stay Pending Resolution of Manufacturer's Declaratory Judgment Action (Dkt. No. 18, the

"Motion"), which was brought by Keep Truckin, Inc. ("Keep Truckin") in the Northern District of

California.[1]

---

[1] *Keep Truckin, Inc. v. Fleet Connect Solutions LLC*, CA 3-21-cv-9775 (N.D. Cal.) ("DJ Action")

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     FACTS ............................................................................................................ 2

III.    ARGUMENT .................................................................................................. 5

     A.     Staying This Case Will Not Promote Efficiency and Judicial Economy. ........... 6

     B.     Substantial Differences Exist Between This Case and The California DJ Such That the First-To-File Rule Should Remain Undisturbed. ................................... 7

     C.     The California DJ Is Ripe For Dismissal. ................................................................ 9

     D.     Equity Weights Against Staying This Case. ........................................................ 10

IV.    CONCLUSION ............................................................................................. 10

## I.    INTRODUCTION

The customer-suit exception should not operate to stay this case because the primary considerations in applying the doctrine—efficiency and judicial economy—will not be advanced by a stay.  That is a natural consequence of the fact that Precision Drilling is not accused of infringement for its role as a mere reseller or user of Keep Truckin products.  In fact, Precision Drilling is primarily accused of directly infringing method claims, the steps of which are performed by Precision Drilling and its employees. And although Fleet Connect also asserts system claims here, those claims are directly infringed by Precision Drilling's and its employees' provision of components, including smartphones, vehicles, and data from the drivers, used in combination with Keep Truckin products. Moreover, the fact that the infringement alleged here is direct allows Fleet Connect to pursue six years of past damages substantially differentiates this case from the California DJ, where Keep Truckin's notice of the patents will likely substantially limit damages. These substantive differences mean that that the California DJ cannot resolve all the issues here.

Even if this were not true, granting a stay here would be inequitable in light of the nefarious motives that inspired the California DJ.  The record shows that, beginning in mid-October, Precision Drilling, Keep Truckin, and their counsel, Kelley Drye, employed deception to secure repeated extensions to answer deadlines—feigning Precision Drilling's interest in settlement and falsely disclaiming their representation of Keep Truckin—to provide time for it to file the California DJ before answering here.  The firm persisted in its ruse when, nine days before its answer deadline, Kelley Drye decided to further its use of this false artifice, this time in hopes to manufacture contacts between Fleet Connect and California to bolster its jurisdictional pleadings. To this end, Kelley Drye disclosed that it actually did represent Keep Truckin, and asked if Fleet Connect was willing to talk settlement.  Fleet Connect confirmed that it was willing, but it insisted that the parties first enter an NDA.  Kelley Drye said it would provide its client's response

1

promptly.

But Fleet Connect never heard back from Kelley Drye, that is, until the day the answer was due in this case. At that time, Fleet Connect was informed that the California DJ was filed. In delivering the news, Kelley Drye stated that "KT management did not take kindly to Fleet Connect suing Keep Truckin customers when Keep Truckin itself was clearly known to Fleet Connect." *See, infra*, §II. At the same time, Kelley Drye claimed that its "clients remain willing to continue discussing settlement" but Fleet Connect should "aggressively adjust its settlement expectations downward with regard to [Keep Truckin]." *See*, *infra*, §II. Surprisingly, Kelley Drye made no effort to hide the fact that the California DJ was filed as a tactic to gain negotiating leverage.

More remarkable, though, is Kelley Drye's characterization of Fleet Connect's discussions with Keep Truckin. Despite the fact that Kelley Drye denied that it represented Keep Truckin right up until nine days prior to filing the California DJ, and notwithstanding Fleet Connect's clear statement that it would not discuss settlement without an NDA, Keep Truckin nonetheless made the best of its attempt to initiate contacts between Fleet Connect and California. Indeed, to support personal jurisdiction over Fleet Connect in California, it pointed to "communications with counsel representing Keep Truckin regarding licensing the Patents-in-Suit." *See* California DJ, Dkt. 1, ¶7. The only other contact cited as support for personal jurisdiction is the single notice letter sent in August of 2020. This type of conduct should prevent Precision Drilling from benefitting from the equitable relief it seeks, and in any event, the Motion should be denied on its merits.

## II.    FACTS

1.    On September 24, 2021, Fleet Connect filed its Complaint for Patent Infringement against Precision Drilling, alleging infringement of U.S. Patent Nos. 6,429,810, 7,450,955, 7,463,896, 7,536,189, 7,742,388 (collectively, the "Asserted Patents") by "using, providing, supplying, or distributing the Accused Instrumentalities." Dkt. No. 1, at ¶¶ 21, 37, 53, 71, and 87.

The "Accused Instrumentalities" include certain KeepTruckin products and associated hardware, software, and functionality. Dkt. No. 1, at ¶ 11.

2.      On October 13, 2021, Michael Zinna of Kelley Drye & Warren LLP ("Kelley Drye") approached the undersigned seeking an extension of 45 days and offering to "discuss whether the case can be resolved amicably." **Ex. 1**, at p. 4.  Counsel for Fleet Connect, Mr. McDonough, agreed to a 30-day extension and indicated he would agree to 45-days if the parties were exploring settlement, which the parties agreed to do.  *Id.* at pp. 1-4.  Mr. McDonough clearly stated that Fleet Connect will not discuss settlement without an NDA, and he forwarded a draft to Mr. Zinna.  *Id.*, at 2-3; **Ex. 2**, at p. 3. Also, being aware that Mr. Zinna often represents Keep Truckin, Mr. McDonough asked whether he was represented Keep Truckin's interests here.  *Id.*

3.      Mr. Zinna responded by disclaiming representation of Keep Truckin, stating that he only represented Flying Star and Precision Drilling. **Ex. 2**, at pp. 2-3.  He also revised the NDA to reflect Fleet Connect and Kelley Drye as the parties.  *Id.*  Mr. McDonough requested a call to discuss these changes, which were not acceptable to Fleet Connect.  *Id.* pp. 1-2.  Mr. Zinna claimed that his client did not want to sign an NDA without having some idea of what an offer might be, and he said if Fleet Connect could give some type of framework, his client might sign and NDA if it was reasonable.  On November 5, 2021, the parties had another call, where Mr. McDonough confirmed that he could not discuss settlement without an NDA, he could confirm that any offer would likely reflect a royalty on sales consistent with those considered reasonable in the industry. *See* McDonough Declaration, at ¶¶ 6.

4.      On November 23, 2021, Mr. Zinna emailed Mr. McDonough claiming that the "information [he] provided was received positively by [Flying Star and Precision Drilling]" and claimed to working towards a "meaningful follow up discussion." **Ex. 3**, at p. 1.  Mr. Zinna

requested another extension through December 20, 2021, to give "ample time to meaningfully chat about settlement after Thanksgiving but before Christmas and before any work needs to be done regarding defense," which would allegedly "leave[] more money in the potential settlement pot." *Id.* Fleet Connect granted the request. *Id.*

5.    The parties had a follow up call on December 8, 2021, at Mr. Zinna's request. **Ex. 4**, at p. 3-4. On that call, rather than discuss moving forward with an NDA for Flying Star and Precision Drilling, Mr. Zinna reversed course and indicated that he represented Keep Truckin, asking whether Fleet Connect would be willing to have settlement discussions with Keep Truckin. **Ex. 4**, at p. 1-2. Mr. McDonough confirmed that, subject to executing the NDA, previously sent, Fleet Connect would likely be willing to discuss settlement directly with Keep Truckin, and Mr. Zinna stated that Keep Trucking did not want to enter an NDA unless they understood the general structure of what an offer might look like. **Ex. 3**, at p. 1-2. Oddly, Mr. Zinna emailed a confirmation, stating "This will confirm your client is willing to have licensing discussions with Keep Trucking." **Ex. 3**, at p. 2. Mr. McDonough later confirmed that Fleet Connect was willing to discuss licensing with Keep Truckin under an NDA and that any offer would likely reflect a reasonable royalty on sales that is consistent with industry royalty rates. *See* McDonough Declaration, at ¶¶ 7.

6.    Nine days later, on December 17, 2021, Keep Truckin filed a declaratory judgment action against Fleet Connect in the Northern District of California. *See* California DJ, Dkt. No. 1. Mr. Zinna emailed the complaint to Mr. McDonough (**Ex. 5**, p. 1), stating:

> KT management did not take kindly to Fleet Connect suing Keep Truckin customers when Keep Truckin itself was clearly known to Fleet Connect. . .
>
> . . .
>
> My clients remain willing to continue discussing settlement. But as you can see from KT's DJ, KT is willing to spend considerable resources vigorously pursuing determinations that the Fleet Connect patents and not infringed and/or

are invalid, so the price of settlement would really need to be right. We think there is some benefit to your client in aggressively adjusting its settlement expectations downward with regard to KT. We would be happy to discuss.

7.    On January 3, 2022, Fleet Connect served its preliminary infringement contentions. *See* Dkt. No. 27.    In those contentions, Fleet Connect asserted 92 claims across the Asserted Patents, including 86 method claims and 6 system claims. *See* Appendix. Each of the asserted method claims allege direct infringement based on the explicit acts of Precision Drilling and its employees/drivers. Likewise, the asserted system claims allege direct infringement for Precision Drilling's and its employees/drivers use of the claimed systems by way of their provision of components, including smartphones, vehicles, and data from the driver, combined with Keep Truckin products. Concurrently, Fleet Connect amended its complaint in response to Precision Drilling's Motion to Dismiss, incorporating by reference its Preliminary Infringement Contentions in response to its allegation that Fleet Connect's complaint was inadequately pled. Dkt. No. 25.

## III.    ARGUMENT

This case is the first filed suit, and there is no good reason to stay it in favor of the California DJ. The general rule is that "'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances." *Kahn*, 889 F.2d at 1089. There is no special circumstance here that should give priority to the California DJ. Fleet Connect chose to file this lawsuit against Precision Drilling because it is a simpler case that does not implicate indirect infringement, asserts primarily method claims, and provides the maximum available past damages.

Fleet Connect's choice of defendant and forum should be left undisturbed. ***First***, this case will not promote the efficiency and judicial economy that the customer-suit exception is intended to address because the majority of issues in this case would not be resolved in the California DJ. ***Second***, there are substantial differences in the theories of infringement and damages sought here versus those that are available in the California DJ. ***Third***, the California DJ is ripe for dismissal

because Fleet Connect is not subject to personal jurisdiction in California and the purpose for which Keep Truckin brought that action, which was to gain a tactical advantage in settlement, controverts the purpose of the Declaratory Judgment Act. **Fourth**, the nefarious motives behind Keep Truckin's filing of the California DJ directly conflict with both the equitable considerations of the first-to-file rule and its exceptions and the Declaratory Judgment Act.

### A. Staying This Case Will Not Promote Efficiency and Judicial Economy.

The differences between this case and the California DJ are so substantial in terms of issues of infringement and damages that staying this case will not create the efficiency or judicial economy that guides the application of the customer-suit exception. The customer suit exception recognizes that, in certain situations, a first-filed patent infringement suit against a "customer" may be stayed in favor of a later-filed suit against a supplier or manufacturer. *See generally Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081–82 (Fed. Cir. 1989). Overall, "the guiding principles in the customer suit exception cases are efficiency and judicial economy." *Motion Offense, LLC v. Sprouts Farmers Mkt.*, No. 6:19-CV-00417-ADA, 2020 U.S. Dist. LEXIS 151300, at *3 (W.D. Tex. Jan. 26, 2020); *Carucel Invs., Ltd. P'ship v. Novatel Wireless, Inc.*, No., 2016 U.S. Dist. LEXIS 192609, at *10 (S.D. Cal. May 13, 2016). However, "[t]here must [a] sound reason that would make it *unjust or inefficient* to continue the first-filed action." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (emphasis added); *see also Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Tex. Sys.,* 458 F.3d 1335, 1343 (Fed. Cir. 2006) (recognizing "it would not be demonstrably more efficient to stay the Texas suits in favor of [the manufacturer suit]."). Without an indication that staying this case will result in efficiencies and judicial economy, there is no reason to invoke the customer-suit exception.

**B. Substantial Differences Exist Between This Case and The California DJ Such That the First-To-File Rule Should Remain Undisturbed.**

As noted above, this case stands in stark contrast to the issues that will predominate the California DJ. Precision Drilling and Keep Truckin have not been charged with identical acts (or even theories) of infringement, and a determination regarding Keep Truckin's infringement will not conclusively resolve Precision Drilling's liability. *See Corydoras Techs., LLC v. Best Buy Co.,* No. 2:19-cv-00304-JRG-RSP, 2020 U.S. Dist. LEXIS 45578, at *2-3, 10-13 (E.D. Tex. Mar. 16, 2020) (second-filed declaratory judgment action by the manufacturer "will not conclusively resolve any counts of infringement against [the customer], in this case, for method claims")

One reason that the California DJ cannot resolve any of the claims asserted here is because they all implicate the actions of Precision Drilling and its employees. Precision Drilling is charged exclusively with ***direct infringement*** of the claims of the Asserted Patents. *See*, *supra*, §II. Moreover, the large majority of claims asserted here are method claims, the steps of which are performed by Precision Drilling or its employees/drivers. *See*, *supra*, §II. And even for the claims that cover systems, the direct infringement allegations are targeted toward Precision Drilling and its employees for their use of components, including smartphones, vehicles, and data from the drivers, in combination with Keep Truckin products. *Id.*

In cases like this, District courts routinely decline to impose stays based on the customer-suit exception where a manufacturer is potentially liable only for indirect infringement, and where the customer is accused of direct infringement. *Sprouts*, 2020 U.S. Dist. LEXIS 151300, at *6-7 (denying motion to stay by customer defendant accused of directly infringing system and apparatus claims). District courts also often decline to give preference to a second filed suit when major issues would not be resolved in the manufacturer lawsuit, especially where the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a

method patent.[2]  *Parallel Networks Licensing, LLC v. Superior Turnkey Sols. Grp., Inc*., Civil Action No. 4:19-cv-516, 2020 U.S. Dist. LEXIS 76750, at *7-8 (E.D. Tex. May 1, 2020) (denying customer's motion to stay because the manufacturer's declaratory judgment action would not resolve the "major issue" of liability for infringement of method claims).

These direct infringement allegations allow Fleet Connect to seek six years of past damages, substantially longer than it could seek for Keep Truckin's indirect infringement due to the required notice.   The California DJ, on the other hand, seek a declaration as to direct and indirect infringement, which is a substantially more complicated case that requires a showing of proof as to the direct infringers and issues of notice as to damages.  On balance, this case a much simpler one than the California DJ, which weighs against application of the customer-suit exception.   These substantive differences take this case outside those traditional cases that implicate the customer-suit exception.  In the end, staying this case would accomplish nothing other than waste resources and delay Fleet Connect's attempt to resolve this case.

Admittedly Precision Drilling states that it "agrees to be bound by the outcome of the KT DJ," which "ensures that final resolution of the KT DJ will resolve the issues of infringement and validity of the patents-in-suit here."  Motion, p. 2.  However, this statement ignores the fact that

---

[2] *Sas Inst., Inc. v. World Programming Ltd*., No. 2:18-CV-00295-JRG, 2019 U.S. Dist. LEXIS 229850, at *8, 11-13 (E.D. Tex. Apr. 4, 2019) ( "[T]he customer-suit exception does not apply when the claims against the manufacturer and non-manufacturer defendants are not identical, such as when—as here—the manufacturer and non-manufacturer defendants are respectively accused of indirect and direct infringement of a method patent."); *Rembrandt Wireless Techs., LP v. Apple Inc*., 2019 U.S. Dist. LEXIS 205698 (E.D. Tex. Nov. 27, 2019); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co*., 2016 U.S. Dist. LEXIS 55205 at *10-12 (E.D. Tex. April 26, 2016) (collecting cases); *Carucel*, 2016 U.S. Dist. LEXIS 192609; *RegenLab USA LLC v. Estar Techs. Ltd*., No. 16-cv-08771 (ALC), 2017 U.S. Dist. LEXIS 131495 (S.D.N.Y. Aug. 17, 2017); *Kaneka Corp. v. Zhejiang Med. Co*., No. CV 11-02389 SJO (SHSx), 2016 U.S. Dist. LEXIS 184735 (C.D. Cal. July 6, 2016); *JoeScan, Inc. v. LMI Techs., Inc.,* No. C07-5323RJB, 2007 U.S. Dist. LEXIS 65498 (W.D. Wash. Sep. 5, 2007); *In re. Laughlin Prods., Inc*., 265 F. Supp. 2d 525 (E.D. Pa. May 28, 2003); *A.P.T., Inc. v. Quad Envtl. Techs. Corp*., 698 F. Supp. 718 (N.D. Ill. 1988).

Precision Drilling may still be found to infringe the Asserted Patents even if Keep Truckin is not found to induce infringement of the Asserted Patents. *See Microsoft Corp. v. DataTern, Inc*., 755 F.3d 899, 904 (Fed. Cir. 2014). A resolution of the California DJ would not resolve this dispute, nor would it provide the efficiency and judicial economy needed to justify a stay.[3]

### C. The California DJ Filed By Keep Truckin Is Ripe for Dismissal.

Staying this case will not only prejudice Fleet Connect, but it will fail to simplify the issue in this case. Precision Drilling's Motion is premised on the existence of the California DJ. However, Keep Truckin declaratory judgment action is due to be dismissed for several reasons.

*First*, Keep Truckin's complaint should be dismissed because the facts asserted do not give rise to a personal jurisdiction in the Northern District of California. As noted in Precision Drilling's Motion, Fleet Connect "sent a letter to Keep Truckin." Motion, at p. 1. This single letter was sent in August 2020, over sixteen months ago. *See* KT DJ, Complaint, at ¶ 34. This sole communication over sixteen months ago is insufficient to create personal jurisdiction over Fleet Connect in the Northern District of California. *See, e.g. Slack Techs., Inc. v. Phoji, Inc.,* No. 20-cv-01509-EMC, 2020 U.S. Dist. LEXIS 146103, at *17 (N.D. Cal. Aug. 13, 2020) (one cease and desist letter, several emails, and other contacts with technology companies do not create sufficient contacts);

---

[3] Considering the above, Precision Drilling's reliance on cases like *Kirsch Research & Dev., LLC v. BlueLinx Corp.* is misplaced for several reasons. Motion, at p. 3-4 (citing No. 6:20-cv-00316-ADA, 2021 U.S. Dist. LEXIS 191694 (W.D. Tex. Oct. 4, 2021)). First, the plaintiff in that case filed suit against the customer and several manufacturers *on the very same day*, so staying the customer case did not necessarily deprive the plaintiff of its choice of venue, because the first filed doctrine was not implicated. *BlueLinx Corp*., 2021 U.S. Dist. LEXIS 191694, at *3; *cf. Kahn*, 889 F.2d at 1081 ("'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances."). Second, *BlueLinx* was also a "mere reseller," as well. *BlueLinx Corp*., 2021 U.S. Dist. LEXIS 191694, at *2-3 (Kirsch alleged that BlueLinx infringed by selling roofing products manufactured by other entities, *e.g.* Owens Corning Roof and Asphalt LLC). Third, all the other cases (against manufacturers) had already been stayed pending resolution of IPRs. The BlueLinx case was a customer case and just hadn't been stayed yet. *Id.*, at *4.

*Apple Inc. v. Zipit Wireless, Inc.*, No. 5:20-cv-04448-EJD, 2021 U.S. Dist. LEXIS 27550, at *1 (N.D. Cal. Feb. 12, 2021); *Levita Magnetics Int'l Corp. v. Surgical*, No. 19-cv-04605-JSW, 2020 U.S. Dist. LEXIS 145675, at *12 (N.D. Cal. Apr. 1, 2020). As noted above, the other "contact" identified by Keep Truckin is the alleged "licensing" discussions, which never happened. In fact, Fleet Connect repeatedly emphasized it would not discuss settlement without an NDA.[4]

### D. Equity Weights Against Staying This Case.

The Court may also considerable equitable grounds in determining a motion to stay. *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-00340-JRG, 2020 U.S. Dist. LEXIS 219276, at *4 (E.D. Tex. Apr. 6, 2020). The Federal Circuit has found conduct of exactly this type to create the very inequities that the first-to-file rule and its exceptions are designed to ameliorate. *See Communs. Test Design, Inc. v. Contec, LLC,* 952 F.3d 1356, 1366 (Fed. Cir. 2020) (a "nefarious motive" in filing an anticipatory suit and disrupting settlement talks are "inconsistent with the purpose of the Declaratory Judgment Act."); *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.,* 367 F. Supp. 3d 350 (Fed. Cir. 2007) (same). Kelley Drye's use of active deception to allow it time to file the California DJ before Precision Drilling's answer in this case, coupled with its attempt to manufacture contacts to create personal jurisdiction over Fleet Connect and its immediate use of the California DJ as leverage, should be cause for denial of the equitable relief it seeks.

### IV.    CONCLUSION

For the above reasons, Fleet Connect respectfully requests that the Motion be denied.

---

[4] Additionally, the California DJ should be dismissed because it contravenes the very purpose of the declaratory judgment act, *i.e.*, it is not meant to be used for the improper purpose of leverage in settlement negotiations. *See*, *supra*, §II; *cf., Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.").

Dated: <u>January 6, 2022</u>                    Respectfully submitted,

                                                <u>/s/ James F. McDonough, III</u>
                                                James F. McDonough, III *
                                                Jonathan R. Miller *
                                                Travis E. Lynch *
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                3621 Vinings Slope, Suite 4300
                                                Atlanta, Georgia 30339
                                                Telephone: (470) 480-9505, -9517, -9514
                                                Email: jim@rhmtrial.com
                                                Email: miller@rhmtrial.com
                                                Email: <u>lynch@rhmtrial.com</u>

                                                Jonathan Hardt (TX 24039906)*
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                1105 Nueces Street, Suite A
                                                Austin, Texas 78701
                                                Telephone: (210) 289-7541
                                                Email: <u>hardt@rhmtrial.com</u>

                                                C. Matthew Rozier (CO 46854)
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                2590 Walnut Street, Suite 10
                                                Denver, Colorado 80205
                                                Telephone: 720-820-3006
                                                Email:  matt@rhmtrial.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system.  As such, this document was served on all counsel who are deemed to have consented to electronic service.

Dated: <u>January 6, 2022</u>

By: <u>*/s/ James F. McDonough, III*</u>
James F. McDonough, III