IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**FLEET CONNECT SOLUTIONS, LLC,**
*Plaintiff,*

*v.*

**PRECISION DRILLING
CORPORATION,**
*Defendant.*

6:21-CV-00987-ADA

<u>ORDER DENYING DEFENDANT'S MOTION TO STAY</u>

Before the Court is Defendant Precision Drilling Corporation's ("Precision Drilling" or "Defendant") Opposed Motion to Stay Pending Resolution of Manufacturer's Declaratory Judgment Action. ECF No. 18 (the "Motion"). Plaintiff Fleet Connect Solutions, LLC ("Fleet Connect") filed an opposition on January 7, 2022, ECF No. 28, to which Precision Drilling filed a reply, ECF No. 30. Fleet Connect filed a sur-reply with leave of Court on January 21, 2022. ECF No. 34. Upon review, that Motion is **DENIED**.

## I. BACKGROUND

On September 24, 2021, Fleet Connect sued Precision Drilling, claiming it infringed U.S. Patent Nos. 6,429,810, 7,450,955, 7,463,896, 7,536,189, and 7,742,388 (collectively, the "Asserted Patents"). ECF No. 1. It later filed an amended complaint alleging the same. ECF No. 25. Fleet Connect avers that Precision Drilling infringes the Asserted Patents by, *inter alia*, using one or more "fleet management and tracking solutions" (the "Accused Instrumentalities") to wirelessly communicate with vehicles and shipping containers and track maintenance needs and compliance with transportation regulations. *Id*. ¶¶ 11–15. All Accused Instrumentalities are products non-party Keep Truckin, Inc. ("KT") supplies to Precision Drilling. *See id*. ¶ 11; ECF No. 18 at 1.

1

Precision Drilling is KT's customer. ECF No. 18 at 4. It does not manufacture or sell the Accused Instrumentalities—it buys them from KT and then uses them. *Id*. In December 2021, after Fleet Connect filed this Action, KT filed a declaratory judgment action against Fleet Connect in the United States District Court for the Northern District of California, seeking a declaratory judgment that the Asserted Patents are invalid and not infringed. *See* Complaint, *Keep Truckin, Inc. v. Fleet Connect Solutions LLC*, No. 5:21-cv-09775, ECF No. 1 (N.D. Cal. Dec. 17, 2021) (the "KT DJ"). That suit is ongoing.

After KT filed the KT DJ, Precision Drilling filed the instant Motion, asking this Court to stay this Action pending "final resolution" of the KT DJ. *Id*. at 5.

## II. LEGAL STANDARD

A trial court has broad discretion to stay an action against a party to promote judicial economy. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In a patent suit like this one, where suits are brought by or against a manufacturer and its customers, the action against the customers should be stayed until the manufacturer action is resolved to promote judicial economy. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014).

This is known as the "customer-suit exception" and can overrule the first-filed rule—the exception provides that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This exception "exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo*, 756 F.3d at 1365 (citation omitted). "[C]ourts apply the

2

customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

To warrant a stay of the customer suit, the case involving the manufacturer "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). Courts should use a "flexible approach" to avoid wasteful expenditure of resources, and should therefore "stay[] proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also In re Nintendo*, 756 F.3d at 1365–66 (explaining that the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination" (citations omitted)).

When determining whether the customer suit exception applies, the court analyzes three factors: "(1) whether the customer-defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in the later-filed case that is in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495-WCB, 2018 U.S. Dist. LEXIS 142173, at *14 (E.D. Tex. Aug. 22, 2018) (quoting *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, No. 2:13-CV-909, 2015 U.S. Dist. LEXIS 675, at *2 (E.D. Tex. Jan. 6, 2015)). The "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spread Spectrum*, 657 F.3d at 1357 (citation omitted).

Even if the Court does not apply the customer suit exception, it can still grant a stay using the traditional stay factors, which include: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues

and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *In re Trustees of Bos. Univ. Patent Cases*, No. CV 13-12327-PBS, 2014 WL 12576638, at *2 (D. Mass. May 16, 2014).

## III. ANALYSIS

Precision Drilling asks the Court to stay this case pending resolution of the KT DJ, which involves KT products and the same patents at issue here. It argues this case falls under the "customer-suit exception" to the first-filed rule, and that even if it doesn't, the traditional stay factors weigh in favor of granting its motion. ECF No. 18 at 6.

### A.    Customer-Suit Exception

The customer suit exception applies if: (1) Precision Drilling shows it is merely a reseller of the Accused Instrumentalities; (2) it agrees to be bound by the outcomes of KT's suit; and (3) KT is the only source of the accused products. The exception does not apply here because Defendant is not a mere reseller of the Accused Instrumentalities.

Fleet Connect contends that this Action escapes the customer-suit exception because "a determination regarding [KT's] infringement will not conclusively resolve Precision Drilling's liability." ECF No. 28 at 7. This is, according to Fleet Connect, "a natural consequence of the fact that Precision Drilling is not accused of infringement for its role as a mere reseller or user of Keep Truckin Products." *Id.* at 1. Fleet Connect challenges the "mere reseller" or "mere user" labels by reference to method and system claims requiring action or components that KT does not supply.

As to method claims, Fleet Connect remarks that "the large majority of claims asserted here are method claims, the steps of which are performed by Precision Drilling or its employees/drivers," not KT. *Id.*; ECF No. 30 at 2. Method claims can pose a challenge to the narrative that the defendant-customer is "merely a reseller." In the context of device claims, if a manufacturer infringes by manufacturing the device, a downstream distributor will almost

4

certainly infringe by selling it. Meaning, resolving the manufacturer's infringement resolves the distributor's infringement. But in the context of method claims, a manufacturer and a downstream distributor or customer may use the manufacturer's product in different ways, or to different extents, such that one infringes a patented method while the other doesn't. Resolving the manufacturer's infringement does not necessarily resolve the distributor's or the customer's infringement.

This is not, however, a hard and fast rule; asserting method claims does not automatically withdraw a case from the customer-suit exception. For example, the Federal Circuit in *In re Nintendo*, endorsed a stay under customer-suit-exception principles where the manufacturer and its retailers were both accused of directly infringing method claims. 756 F.3d 1363, 1365 (Fed. Cir. 2014). Yet, as one court has explained, the accused product in *Nintendo* allegedly infringed the asserted method claims "off the shelf." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 U.S. Dist. LEXIS 55205, at *8 (E.D. Tex. Apr. 26, 2016) (Bryson, J.). That is, under the plaintiff's infringement theory, every entity using the accused product necessarily infringed the asserted method claims. Consequently, "for the issues of infringement and validity, a resolution against [the manufacturer] would resolve those issues for [its retailers]"—as the *Nintendo* plaintiff conceded. *Secure Axcess, LLC v. Nintendo of Am., Inc.*, No. 2:13-cv-32-JRG, 2014 U.S. Dist. LEXIS 30115, at *6 (E.D. Tex. Mar. 7, 2014), *vacated on other grounds*, *In re Nintendo*, 756 F.3d at 1366. In that case, the *Nintendo* retailers could still be said to be mere resellers.

Like in *Nintendo*, the plaintiff here has seemingly accused both the manufacturer and its customer of directly infringing method claims. But, unlike in *Nintendo*, Defendant has not shown or suggested that the Accused Instrumentalities infringe the asserted method claims "off the shelf."

5

Precision Drilling has not explained how, for the issue of infringing method claims, resolution against KT would resolve that issue as to Precision Drilling. Instead, a solitary footnote in the reply suggests that this Action and the KT DJ both also involve "several system claims, so Fleet Connect's argument about the impact of the distinction between method claims and system claims only relates to some of Fleet Connect[']s allegations." ECF No. 30 at 2 n.2. But it is not just "some" of Fleet Connect's allegations: Fleet Connect's preliminary infringement contentions contain 86 method claims and only 6 system claims. *See* ECF No. 28 at 5. In the Court's judgment, Fleet Connect accurately characterizes the impact of method claims under this factor.

Additionally, Precision Drilling's reliance on system claims to cast itself as a mere reseller or user of KT technology is misplaced. Precision Drilling fails to address Fleet Connect's contention that Defendant infringes the system claims by combining KT products with "components, including smartphones, vehicles, and data" provided by Defendant and its personnel. ECF No. 28 at 1, 5. The accused systems, it seems, are incomplete without components supplied by Defendant. *Id.* This suggests that Defendant is more than a mere user.[1] Precision Drilling's silence on this point is conspicuous.[2]

---

[1] *Compare NFC Tech., LLC v. HTC Am.*, No. 2:13-CV-01058-JRG, 2014 WL 3867963, at *2 (E.D. Tex. Aug. 5, 2014) (finding that the customer was not a "mere reseller" where "many of the claims involve not only the [manufacturer's] chip set but its combination" with the defendant's hardware), *with Sonrai Memory Ltd. v. Samsung Elecs. Co.*, No. 6:21-cv-00169-ADA, 2022 U.S. Dist. LEXIS 32294, at *9 (W.D. Tex. Feb. 24, 2022) (finding that the customer was a "mere reseller" where "the asserted claims . . . are all apparatus claims that are being asserted exclusively against the circuitry of the [manufacturer's] Accused Chips in the [customer's] accused products" such that infringement charts against the manufacturer and customer were identical).

[2] Although Precision Drilling agrees "to be bound by the outcome of the KT DJ," it is unclear what Precision Drilling is even binding itself to given that the infringement issues are not common between this Action and the KT DJ.

Defendant quickly retreats to the position that "the manufacturer's case need not have the possibility to resolve all of the issues in the customer case in order for the customer suit exception to apply." *Id.* at 3. It posits that the KT DJ could resolve major issues in this Action yet offers only one example: the KT DJ's potential invalidation of the Asserted Patents. ECF No. 30 at 3. "If that is the result of the KT DJ, the issue of Precision Drilling's infringement need never be reached, and this entire customer case will be resolved by the KT DJ." *Id.* The Court notes that the same rationale could justify staying the second-filed KT DJ in favor of this first-filed Action. But this rationale alone is grossly insufficient to justify staying this Action under the customer-suit exception. *See, e.g.*, *In re Cinemark Holdings, Inc.*, 839 F. App'x 476, 479 & n.2 (Fed. Cir. 2020) (rejecting any suggestion that the district court erred in applying the principles underlying the customer-suit exception where "the issues of infringement are not clearly common between the cases").

For the foregoing reasons, the Court concludes that Precision Drilling has not shown that it is a mere reseller or mere user as those terms are used under the customer-suit exception. Here, Precision Drilling is the true defendant.

### B.    Traditional Stay Factors

Defendant also moves for a stay under the traditional stay factors but, in failing to show that it is a mere reseller, Precision Drilling has not shown that the issues of direct infringement are clearly common between these cases. Given that, it is unlikely that a stay will simplify the issues in this Action. This is typically the most important factor in the stay analysis. *See, e.g.*, *Sonrai Memory Ltd. v. LG Elecs. Inc.*, No. 6:21-cv-00168-ADA, 2022 U.S. Dist. LEXIS 112733, at *7 (W.D. Tex. June 27, 2022). All a stay would accomplish is delay Fleet Connect from seeking vindication of its hard-won patent rights against an accused infringer.

7

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant Precision Drilling Corporation's Opposed Motion to Stay Pending Resolution of Manufacturer's Declaratory Judgment Action is **DENIED**.

SIGNED this 30th day of June, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE